**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WEN JUN LIU, Petitioner, v. KRISTI NOEM, et al., Respondents. | Case No. 5:26-cv-00891-MRA-PD **ORDER DENYING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER WITHOUT PREJUDICE [2]** |

Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 2. Petitioner seeks immediate release and to enjoin his removal to a third country. *Id.* at 3. The Court read and considered the moving and opposing papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **DENIES** the TRO Application without prejudice.

## I. BACKGROUND

Petitioner Wen Jun Liu ("Petitioner") filed this habeas petition *pro se* on February 23, 2026. ECF 1. The petition alleges as follows:

Petitioner is a native and citizen of China who entered the United States without admission on March 28, 2023. *Id.* at 3. Customs and Border Patrol apprehended Petitioner upon entering the United States; he was later transferred to Los Angeles, California before

being released on the conditions that he wear a GPS wristwatch monitor, remain in Los Angeles, and report to Immigration and Customs Enforcement ("ICE") daily for 52 days. *Id.* Petitioner complied with the conditions and, after 52 days, ICE removed the GPS monitor and required Petitioner to report in six months. *Id.* Following the six-month check-in, ICE required Respondent to report in one year. *Id.*

In April 2024, Petitioner received work authorization and began working at a massage parlor in Los Angeles. *Id.*

On February 14, 2025, Petitioner was arrested. *Id.* According to the government, Petitioner was arrested and charged in the Ventura County Superior Court with several offenses in connection with theft from an elder or dependent adult. ECF 9-1 ("Suarez Decl."), ¶¶ 7-12. Specifically, Respondents allege Petitioner was convicted on or about March 19, 2025, of the following four felonies: Conspiracy to Commit a Crime in violation of California Penal Code ("CPC") § 182; Grand Theft in violation of CPC § 487; Receiving Stolen Property in violation of CPC § 496; and Elderly Abuse in violation of CPC § 368. *Id.* ¶¶ 13-16. Petitioner alleges that he was sentenced to 364 days in county jail and served six months of his sentence. ECF 1 at 3. ICE promptly apprehended Petitioner upon his release from local custody on August 14, 2025. *Id.* Petitioner has remained in ICE custody since that date and is currently detained at the Adelanto ICE Processing Center in Adelanto, California. *Id.*

On September 18, 2025, an immigration judge ordered Petitioner removed to China. *Id.* at 4. Petitioner cooperated with the government's efforts to remove him: "Petitioner has sent a copy of passport to ICE, spoken with Chinse Consulate and Chinese Embassy for travel documents, filled out forms as requested, and ICE has been provided with copies of written communications, contact names, addresses and phone numbers." *Id.* at 6. In early October 2025, Petitioner received a "Warning for Failure to Depart" and was instructed to complete various requirements within 30 days to assist in his removal. *Id.* at 4. Petitioner complied with the requirements to the best of his ability given the limited resources available to him in immigration custody. *Id.* On or about October 15, 2025,

Petitioner received a notice stating his custody status would be reviewed on or about December 3, 2025. *Id.* On or about December 17, 2025, Petitioner received a decision to continue his detention. *Id.* Petitioner sought a personal interview to discuss the decision but was never interviewed. *Id.*

In the instant TRO Application, which was filed the same day as the petition, Petitioner requests that the Court enjoin Respondents Kristi Noem, Secretary of Department of Homeland Security; Pamela J. Bondi, United States Attorney General; the Department of Homeland Security; Thomas Giles, Los Angeles Field Office Director, ICE; James Pilkington, Assistant Field Office Director, Adelanto Detention Facility; and Warden of the Adelanto Detention Facility (collectively, "Respondents" or the "government") from continuing to detain him. *Id.* at 1-2. Petitioner argues there is no significant likelihood of removing him to China in the reasonably foreseeable future based on statistics available on ICE's website showing a low percentage of removal for Chinese nationals with a criminal record. *Id.* at 3. Petitioner argues that he has fully cooperated with ICE's efforts to remove him and is suffering from anxiety, depression, and difficulty sleeping and eating because of his prolonged detention. *Id.* at 7. Petitioner also requests that the Court enjoin Respondents from removing him to a third country until the Court resolves his petition. *Id.* at 3.

On February 27, 2026, Respondents filed an Opposition to the TRO Application. ECF 9.[1] Respondents submitted with their Opposition a declaration from Jorge Suarez, the deportation officer who purportedly reviewed Petitioner's case file. ECF 9-1. Suarez describes Petitioner's past convictions and states that, on September 30, 2025, ICE conducted a travel interview with Petitioner, and that on October 3, 2025, the government submitted a request for a travel document to the Consulate General of China, which remains

---

[1] Respondents contend they were not served with the Petition (ECF 1) and TRO (ECF 2) and were otherwise unable to access the documents because the docket is sealed. Notice of both documents was promptly served via email to USACAC.Habeas@usdoj.gov; CaseView.ECF@usdoj.gov; USACAC.Civil@usdoj.gov; and oil-dcs.cacd@usdoj.gov.

pending. *Id.* ¶¶ 20-22. During this removal period, the government argues it has authority to continue to detain Petitioner pursuant to 8 U.S.C. § 1231(a)(2). ECF 9 at 3-4. Petitioner did not file a reply.

## II. LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is substantively the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

## III. DISCUSSION

Having reviewed and considered the filings and applicable law, the Court finds that a TRO is not warranted because Petitioner is unlikely to succeed on the merits of his claims.

### A. Jurisdiction

A writ of habeas corpus under 28 U.S.C. § 2241 shall issue where the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). The government argues that the Court lacks jurisdiction to review Petitioner's claims under 8 U.S.C. § 1252(g) and § 1252(b)(9) "[i]nsofar as Petitioner seeks to effectively block [his] arrest and detention pursuant to removal proceedings by an order releasing [him] from detention—as distinct from any claim challenging the length of post-removal order detention under *Zadvydas*." ECF 9 at 7. That is not how the Court interprets Petitioner's request. Petitioner is not challenging the government's decision to commence

removal proceedings or anything related to the merits of his removability. *See* ECF 1, 2. Instead, Petitioner is challenging the length of his detention during the post-removal period and his possible removal to a third country. *Id.* Notwithstanding the jurisdictional bars set forth in the Immigration and Nationality Act ("INA"), Section 2241 "remain[s] available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.").[2] Thus, the Court finds its review of Petitioner's claims appropriate under 28 U.S.C. § 2241.

**B. Likelihood of Success on the Merits**

In deciding whether to grant injunctive relief, "[l]ikelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Petitioner contends that his continued detention violates his right to due process under the Fifth

[2] The Supreme Court has interpreted 8 U.S.C. §§ 1252(b)(9) and 1252(g) narrowly and cautioned against reading too broadly into the jurisdictional limitations of the statute. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-94 (2018) ("Interpreting "arising from" in this extreme way would also make claims of prolonged detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place."); *Ibarra-Perez v. United States*, 154 F.4th 989, 997-1000 (9th Cir. 2025) ("§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders"; "We have held that § 1252(b)(9) does not does not bar claims that are 'independent of or collateral to the removal process.'"). The Court is assured of its jurisdiction over this matter for the reasons set forth in its recent decision in *Munoz v. Semaia*, No. 25-cv-028989-MRA, ECF 10 at 4-7 (C.D. Cal. November 14, 2025). *See also, e.g.*, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 2670875 (C.D. Cal. July 28, 2025); *Ceja Gonzalez v. Noem*, No. 5:25-cv-2054-ODW-BFM, 2025 WL 2633187 (C.D. Cal. Aug. 13, 2025); *Benitez v. Noem*, No. 5:25-cv-2190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025).

Amendment of the United States Constitution, as well as the INA, 8 U.S.C. § 1231(a). ECF 1 at 6-7. Petitioner also argues that removal to a third country would violate his right to due process under the Fifth Amendment and the INA, as well as the Convention Against Torture and implementing regulations. *Id.* at 13. The Court addresses these claims in turn.

*First*, under the INA, when a noncitizen is ordered removed, the government ordinarily must secure the noncitizen's removal from the United States within a period of 90 days, known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). Certain noncitizens ordered removed may be detained beyond the 90-day removal period, including, *inter alia*, those who are removable under 8 U.S.C. § 1227(a)(2) for certain criminal offenses, those determined to be a risk to the community, or those unlikely to comply with the order of removal. *Id.* § 1231(a)(6). If released, they must be subject to terms of supervision. *Id.*

In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-period detention scheme contains "an implicit 'reasonable time' limitation." 533 U.S. 678. 682 (2001). That is, "the statute, read in light of the Constitution's demands, limits [a noncitizen]'s post-removal-period detention to a period reasonably necessary to bring about that [noncitizen]'s removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Supreme Court prescribed that the "presumptively reasonable" period of detention is six months. *Id.* at 701. In setting forth this six-month presumption, however, the Court made clear that it "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a[] [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, after this six-month period, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."[3] *Id.* For detention to remain reasonable, "as the period

[3] Several district courts have recognized that *Zadvydas*'s burden-shifting framework does not apply to noncitizens who are *re-detained* pursuant to the revocation of an Order of Supervision. *See Lu v. Joyce*, No. 2:26-CV-00041-SDN, 2026 WL 352447, at *3 (D.

of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Petitioner concedes that he has not yet been detained for a period of six months post-removal but argues he should still be released pursuant to *Zadvydas* because there is no significant likelihood that he will be removed in the reasonably foreseeable future. ECF 1 at 7. Courts in this district routinely find *Zadvydas* does not apply to noncitizens detained for less than the presumptively reasonable period of detention. *See Fedorov v. Warden Adelanto ICE Processing Ctr.*, No. 5:25-CV-01956-JLS-SP, 2025 WL 3691396, at *1 (C.D. Cal. Aug. 1, 2025) ("[Petitioner's *Zadvydas*] argument fails because by Petitioner's own averments, he has been detained only two months . . . making his request for relief premature"); *Singh v. Janecka*, No. 5:26-CV-00671-SPG-AJR, 2026 WL 483237, at *3 (C.D. Cal. Feb. 18, 2026) (finding immigration detention period of approximately three months presumptively reasonable under *Zadvydas*); *Shahvaladian v. Garland*, No. 5:25-CV-03001-SPG-AGR, 2025 WL 3692141, at *3 (C.D. Cal. Dec. 16, 2025) (holding Petitioner did not show a likelihood of success on a due process claim where Petitioner was detained for less than six months). Thus, Petitioner has not shown that he has been detained for a period that is constitutionally excessive without due process of law. Moreover, the government represents that it has requested Petitioner's travel document and is making efforts to remove him to China. ECF 9 at 3.

---

Me. Feb. 9, 2026); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); *Saqib v. Andrews*, No. 1:25-CV-2035 DC CSK P, 2026 WL 350830, at *3 (E.D. Cal. Feb. 9, 2026), *report and recommendation adopted sub nom*,. No. 1:25-CV-02035-DC-CSK (HC), 2026 WL 440566 (E.D. Cal. Feb. 17, 2026); *Espada v. Doe*, No. 5:25-CV-02983-JWH-KES, 2026 WL 181539, at *5 (C.D. Cal. Jan. 20, 2026), *report and recommendation adopted*, No. 5:25-CV-02983-JWH-KES, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026). As those cases and the immigration regulations make clear, when the government revokes release to effectuate removal, the *government* bears the burden of showing "a significant likelihood that the [noncitizen] may be removed." *See Andrews*, 2026 WL 350830, at *3.

As explained above, detention beyond the presumptive six-month period does not automatically warrant release. Nevertheless, the Court's ruling is without prejudice to refiling a similar motion if Petitioner remains detained for more than six months and can show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

*Second*, Petitioner argues that removal to a third country without prior notice and an opportunity to present a fear-based claim would violate his due process rights. Petitioner identifies policies and statements from the current administration to demonstrate his fear that he will be removed to a third country without due process as "punitive banishment." ECF 1 at 13-16; ECF 2 at 5-7.

As an initial matter, the July 9, 2025, memorandum cited by Petitioner was recently deemed unlawful. *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *44 (D. Mass. Feb. 25, 2026). Regardless, Petitioner has not shown that the government intends to remove him to a third country. ECF 1 at 11. Respondents reportedly have sought travel documents only from the Consulate General of China. ECF 9 at 3. "Therefore, Petitioner's fear of being removed to a third country without proper notice or opportunity to respond is only speculative and not ripe for adjudication." *Morales Sanchez v. Bondi*, No. 5:25-CV-02530-AB-DTB, 2025 WL 3190816, at *4 (C.D. Cal. Oct. 3, 2025); *see also Farsi v. Noem*, No. 5:25-CV-03275-WLH-MBK, 2025 WL 4041921, at *5–6 (C.D. Cal. Dec. 10, 2025) (denying TRO with respect to third country removal because Petitioner failed to assert removal to third country was imminent); *Ovikian v. Noem*, No. 5:26-cv-00158-WLH-E, 2026 WL 242700, at *7 (C.D. Cal. Jan. 23, 2026) (same).

While there is no present indication that the government will seek to remove Petitioner to a third country, any efforts to do so must comport with the applicable statutes and regulations as well as Petitioner's due process rights. *See* 8 U.S.C. § 1231(b)(3)(A); 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18. Under the INA, "the Attorney General may not remove an alien to a country if the Attorney General decides that the

alien's life or freedom would be threatened in that country." 8 U.S.C. § 1231(b)(3)(A). Relatedly, Congress codified protections enshrined in the Convention Against Torture ("CAT") prohibiting any person from being removed to a country where they would be tortured. *See* 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18. "Failing to notify individuals who are subject to deportation that they have the right . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "[T]hird-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings." *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass.), *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1323697 (D. Mass. May 7, 2025), and *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025).

***

The Court need not reach the remaining *Winter* factors given Petitioner at this time is unlikely to succeed on the merits of both claims.

## IV. CONCLUSION

For the foregoing reasons, the TRO Application is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: March 10, 2026

Monica R. Al[signature]

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE